UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| EMILY NILLES, as Special Administratrix of the Estate of Steve D. Nilles, deceased,<br><br>Plaintiff,<br><br>v.<br><br>DS1 LOGISTICS, INC., THOMAS E. WEBB, STARLINE SOLUTIONS, INC., and C.H. ROBINSON WORLDWIDE, INC.,<br><br>Defendants. | CAUSE NO.: 2:22-CV-54-TLS-JPK |

## OPINION AND ORDER

This matter arises out of a motor vehicle collision between Thomas E. Webb, who was operating a semi-tractor-trailer for DS1 Logistics, Inc. (DS1), and Steven D. Nilles, who was driving a motorcycle. Amazon Fulfillment Services, Inc. (Amazon) contracted with C.H. Robinson Worldwide, Inc. (CHRW) for transportation services, and CHRW subsequently brokered the freight shipment at issue to DS1. Webb was operating the semi-tractor-trailer for DS1 pursuant to the contract between CHRW and DS1 at the time of the collision that resulted in Nilles' death. The Plaintiff alleges that CHRW is responsible for the Plaintiff's damages by virtue of CHRW's contract with Amazon, which the Plaintiff alleges makes CHRW vicariously liable for Webb's negligence. Now before the Court is CHRW's Motion to Dismiss Plaintiff's Third Amended Complaint Pursuant to Federal Rule of Civil Procedure 12(b)(6) [ECF No. 71], which is fully briefed. For the reasons below, the Court GRANTS the motion.

## LEGAL STANDARD

"A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) challenges the viability of a complaint by arguing that it fails to state a claim upon which relief may be granted." *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 736 (7th Cir. 2014) (citing Fed.

R. Civ. P. 12(b)(6); *Gen. Elec. Cap. Corp. v. Lease Resol. Corp.*, 128 F.3d 1074, 1080 (7th Cir. 1997)). When reviewing a complaint attacked by a Rule 12(b)(6) motion, a court construes the complaint in the light most favorable to the non-moving party, accepts the factual allegations as true, and draws all inferences in the non-moving party's favor. *Bell v. City of Chicago*, 835 F.3d 736, 738 (7th Cir. 2016). "Factual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). In reviewing a motion to dismiss, a court considers "the complaint itself" as well as "documents attached to the complaint, documents that are critical to the complaint and referred to in it, and information that is subject to proper judicial notice." *Phillips v. Prudential Ins. Co. of Am.*, 714 F.3d 1017, 1019–20 (7th Cir. 2013) (quoting *Geinosky v. City of Chicago*, 675 F.3d 743, 745 n.1 (7th Cir. 2012)). Here, the Court considers the contract between CHRW and DS1, which CHRW attached to its motion to dismiss, as well as the contract between Amazon and CHRW, which the Plaintiff attached to her response brief. Both contracts are critical to and referred to in the Third Amended Complaint.

## PROCEDURAL AND FACTUAL BACKGROUND

The Plaintiff filed her Complaint [ECF No. 4] in the Lake County, Indiana, Superior Court on January 31, 2022, against DS1 and Thomas E. Webb, and the case was removed to this Court on March 8, 2022. ECF No. 1. The Plaintiff filed an Amended Complaint [ECF No. 27] on January 11, 2023, adding Starline Logistics, Inc. and Starline Logistics, LLC as defendants; a Second Amended Complaint [ECF No. 36] on February 6, 2023, dropping the new defendants but adding Starline Solutions, Inc. as a defendant; and a Third Amended Complaint [ECF No.

59] on June 8, 2023, adding CHRW as a defendant. The following facts relevant to the Plaintiff's claim against CHRW are taken from the Third Amended Complaint, the contract between Amazon and CHRW, and the contract between CHRW and DS1.

At all relevant times, DS1 was an interstate motor carrier, and Webb was a truck driver operating DS1's semi-tractor-trailer under DS1's authority and logo. ECF No. 59, Ct. I, ¶¶ 1, 3, 4. CHRW agreed to provide transportation services to Amazon, and DS1 agreed to perform transportation and delivery services for CHRW. *Id.* Ct. II, ¶¶ 4, 6. On September 17, 2021, Webb was operating DS1's semi-tractor-trailer to transport a shipment pursuant to the agreements when he turned left into Nilles, who was traveling by motorcycle, causing the accident that resulted in Nilles' death. *Id.* Ct. I, ¶¶ 4, 6, 10, 13–15, Ct. II, ¶¶ 4–6.

The written agreement between Amazon and CHRW (the Amazon contract) provides that CHRW would arrange for transportation and delivery "Services" to be provided to Amazon. ECF No. 74-1, at 1. "Services" are defined to include "receiving, loading, storing, transporting, unloading and related transportation services." *Id.* at 11. Section 4, titled "Representations and Warranties," provides:

> [CHRW] represents and warrants that it and its affiliates will, and *that it shall contractually require subcontractors engaged by it to*:
>
> (a) perform the Services in a professional, competent and workmanlike manner in accordance with the level of professional care customarily observed by companies rendering similar services on a nationwide basis for Fortune 500 companies;
>
> (b) meet, at a minimum, the Performance Standards;
>
> (c) *not violate or infringe any third party's right in proprietary or confidential information in performing the Services*;
>
> (d) comply with all international and United States federal, state and local laws, rules, regulations and orders pertaining to the Services;
>
> (e) hold, and fully comply with, all licenses, permits and approvals required by international and United States federal, state and local authorities to perform the Services;

3

> (f) not be subject to any restriction, penalty, agreement, commitment, law, rule, regulation or order which is violated by its execution and delivery of this Agreement and performance of its obligations under this Agreement;
>
> (g) will promptly notify Amazon of any accident, incident, or event which impairs the safety of, delays delivery of shipments, and also agrees to use reasonable care and due diligence in the protection of the goods or shipments; and
>
> (h) have sufficient equipment (following reasonable advance notice), personnel and resources available to handle all Amazon capacity requirements.

*Id.* at 3–4 (emphasis added).

Section 10 of the Amazon contract is titled "Personnel; Independent Contractors." *Id.* at 7. Section 10.1, titled "Project Assignments," provides in relevant part:

> All personnel furnished by [CHRW] to provide Services are either employees of [CHRW] or independent subcontractors of [CHRW] and are not employees, agents or subconsultants of Amazon . . . . *[CHRW] shall engage subcontracted carriers that will have exclusive control over is personnel, its labor and employee relations and its policies relating to wages, hours, working conditions and other employment conditions*. [CHRW] will engage subcontracted carriers that will have the exclusive right to hire, transfer, suspend, lay off, recall, promote, discipline, discharge and adjust grievances with its personnel.

*Id.* at 7 (emphasis added). Section 10.2, titled "Subcontractors," provides:

> Notwithstanding the existence or terms of any subcontract, [CHRW] will remain responsible for the full performance of the Services. The terms and conditions of this Agreement are *binding upon [CHRW's] employees, and affiliates*. [CHRW] (a) will ensure that *such personnel* comply with this Agreement, and (b) *will be responsible for all acts, omissions, negligence and misconduct <u>of such personnel</u>*. No bill of lading, or other document of any contracted carrier will amend or supersede the terms and conditions of this Agreement.

*Id.* (emphasis added). Similarly, Section 11.1, titled "Assignment," provides, in relevant part:

> To the extent [CHRW] uses affiliates, subcontractors, or other third parties to perform its obligations under this Agreement, [CHRW] will cause and ensure that any such affiliates, subcontractors, or other third parties will comply with the terms of this Agreement. Notwithstanding the existence or terms of any subcontract, [CHRW] will remain responsible for the full performance of the Services.

*Id.*

4

Under the section titled "Performance Standards," CHRW was responsible for, among other things, on-time delivery performance, scheduling deliveries, on-time pickup performance, and scheduling and attending at least monthly meetings with Amazon regarding statistical reports on its performance of the Agreement, including issues of transit time variability, shipment integrity, and loss and damage. *Id*. at 11–12. CHRW was also responsible for providing real time reporting, shipping data, and weekly management reports to Amazon. *Id.* at 12–13.

The written agreement between CHRW and DS1 (the DS1 contract) provides that CHRW is a federally registered property broker engaging DS1 to haul freight as a motor carrier. Def. Ex. A at 2, ECF No. 72-1. In Section 7, titled "Drivers and Equipment," the DS1 contract provides that "[DS1] shall ensure that its drivers are properly trained and licensed, and are competent and capable of safely handling and transporting [CHRW's] shipments." *Id.* at 5. In Section 9, titled "Compliance with Laws," the contract provides that DS1 is "solely responsible for any acts, omissions, and/or violations by [DS1], its employees, contractors or agents." *Id.* at 6. Finally, Section 12, titled "Independent Contractor," provides that "[DS1] is an independent contractor and shall exercise exclusive control, supervision, and direction over (i) the manner in which transportation services are provided; (ii) the persons engaged in providing transportation services; and (iii) the equipment selected and used to provide transportation services." *Id.* at 8.

Count II of the Third Amended Complaint is brought against CHRW, alleging that CHRW is vicariously liable for the negligence of DS1 and Webb and makes the following allegations. ECF No. 59, Ct. II, ¶¶ 2, 14.[1] Webb was working for the "pecuniary benefit" of DS1 and CHRW, DS1 agreed to perform transportation and delivery services for CHRW, and Webb, operating the semi-tractor-trailer under DS1's motor carrier authority, was in the performance of transportation and delivery services for the "mutual benefit" of DS1 and CHRW at the time of the incident. *Id.* Ct. II, ¶¶ 2, 4, 5. CHRW agreed to provide transportation and delivery services

---

[1] Count I brought against Webb and DS1 and Count III brought against Starline Solutions, Inc. are not challenged on the instant motion.

to Amazon and was in the performance of those services at the time of the incident. *Id.* Ct. II, ¶ 6. CHRW was responsible for the full performance of the transportation and delivery services, which were being performed by CHRW, DS1, and Webb at the time of the incident. *Id.* Ct. II, ¶¶ 7, 9. Also, "CHRW was responsible for all acts, omissions, negligence, and misconduct of DS1 and Webb, while DS1 and Webb were in the performance of the transportation and delivery services." *Id.* Ct. II, ¶ 8. Nilles' death was "a direct and proximate result of Defendants' negligence, willfulness, wantonness, and/or recklessness." *Id.* Ct. II, ¶ 10. Finally, "Defendants, DS1 and Webb, were acting within the course and scope of their agency with CHRW, and in furtherance of CHRW's business interests. CHRW is vicariously liable for the negligence of Defendants, DS1 and Webb." *Id.* Ct. II, ¶ 14.

## ANALYSIS

The Plaintiff alleges that CHRW, by virtue of its contract with Amazon, is vicariously liable for the alleged negligence of DS1 and Webb during the delivery services that resulted in Steven Nilles' death. The elements of a negligence claim under Indiana law are "(1) a duty owed to the plaintiff by the defendant, (2) a breach of the duty, and (3) an injury proximately caused by the breach of duty." *Yost v. Wabash Coll.*, 3 N.E.3d 509, 515 (Ind. 2014) (quoting *Pfenning v. Lineman*, 947 N.E.2d 392, 398 (Ind. 2011)).[2] "Absent a duty there can be no negligence or liability based upon the breach." *Goodwin v. Yeakle's Sports Bar and Grill, Inc.*, 62 N.E.3d 384, 386 (Ind. 2016). Whether a duty exists is a question of law for the Court. *Jeffords v. BP Prods. N. Am., Inc.*, 963 F.3d 658, 661 (7th Cir. 2020) (citing *Byrd v. Blue Ridge Rural Elec. Coop., Inc.*, 356 U.S. 525, 537 (1958); *Dunn v. Menard, Inc.*, 880 F.3d 899, 906 (7th Cir. 2018)).

CHRW moves to dismiss this state law negligence claim for failure to plead a valid duty under Indiana law. Specifically, CHRW argues that the Plaintiff has failed to plead an exception

---

[2] As neither party argues otherwise, the Court applies Indiana substantive law to this contract dispute brought under the Court's diversity jurisdiction. *Jeffords v. BP Prods. N. Am., Inc.*, 963 F.3d 658, 661 (7th Cir. 2020) (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938); *Wood v. Mid-Valley Inc.*, 942 F.2d 425, 426–27 (7th Cir. 1991)).

6

to Indiana's long-standing general rule that a principal is not liable for the acts or omissions of an independent contractor. *See Bagley v. Insight Commc'ns Co.*, 658 N.E.2d 584, 586 (Ind. 1995) (citing *Prest-O-Lite Co. v. Skeel*, 106 N.E. 365, 367 (1914); *City of Logansport v. Dick*, 70 Ind. 65, 78 (1880)); *Ryan v. TCI Architects/Eng'rs/Contractors, Inc.*, 72 N.E.3d 908, 914 (Ind. 2017) (citing *Bagley*, 658 N.E.2d at 586). Indeed, there are five exceptions to the rule, and the Plaintiff responds that she is invoking the exception "where the principal is by law or contract charged with performing the specific duty." *Bagley*, 658 N.E.2d at 586 (citing *Perry v. N. Ind. Pub. Serv. Co.*, 433 N.E.2d 44, 47 (1982)).[3] "The duties associated with these exceptions are considered nondelegable, and the principal is liable for negligence of the independent contractor because the responsibilities are deemed so important to the community that the principal should not be permitted to transfer those duties to another." *Gwinn v. Harry J. Kloeppel & Assocs.*, 9 N.E.3d 687, 691–92 (Ind. Ct. App. 2014) (quoting *Beatty v. LaFountaine*, 896 N.E.2d 16, 22 (Ind. Ct. App. 2008)). The exceptions apply to lawsuits brought by employees of the independent contractor as well as by third parties, such as the Plaintiff in this case. *See id.* at 693 (citing *Bagley*, 658 N.E.2d at 587–88).

The Plaintiff argues that the Third Amended Complaint pleads sufficient facts to support a plausible claim of vicarious liability against CHRW for the negligence of DS1 and Webb based on CHRW's contract with Amazon. Vicarious liability "is a legal fiction by which a court can hold a party legally responsible for the negligence of another, not because the party did anything wrong but rather because of the party's relationship to the wrongdoer." *Sword v. NKC Hosps., Inc.*, 714 N.E.2d 142, 147 (Ind. 1999). One of several legal theories under which a party may be held vicariously liable is the nondelegable duty doctrine discussed above. *Id.* (listing respondeat

---

[3] The five exceptions to the general rule that a principal is not liable for the acts or omissions of an independent contractor are where (1) the contract requires the performance of intrinsically dangerous work, (2) the principal is by law or contract charged with performing the specific duty, (3) the act will create a nuisance, (4) the act to be performed will probably cause injury to others unless due precaution is taken, and (5) the act to be performed is illegal. *Bagley*, 658 N.E.2d at 586.

superior, apparent or ostensible agency, and agency by estoppel as other bases for vicarious liability). The Plaintiff reasons that CHRW's contract with Amazon creates the nondelegable duty that results in CHRW's vicarious liability for DS1 and Webb's negligence. In other words, the Plaintiff is not alleging that CHRW did anything wrong but rather that CHRW is responsible for DS1's and Webb's negligence based on CHRW's contract with Amazon.[4]

The Indiana Supreme Court has explained that this exception requires the contract to impose a "specific duty" and to "affirmatively evince[] an intent to assume a duty of care." *Ryan*, 72 N.E.3d at 913–14; *see also Shiel Sexton Co. v. Towe*, 154 N.E.3d 827, 834 (Ind. Ct. App. 2020) ("Courts are to infer a contractually assumed duty that contravenes the common law presumption that a contractor has no duty only if the language of the contract 'affirmatively evinces an intent to assume a duty of care.'" (quoting *Stumpf v. Hagerman Constr. Corp.*, 863 N.E.2d 871, 876 (Ind. Ct. App. 2007))). This exception "is not triggered merely because a contractor may have a right to inspect and test the work, approve of the work and/or employees of the general contractor[,] or require the contractor to follow company safety rules." *Shawnee Constr. & Eng'g, Inc. v. Stanley*, 962 N.E.2d 76, 82 (Ind. Ct. App. 2011). Rather, the "contract must provide for a specific duty of care." *Id.*; *see Barrett v. Barry-Wehmiller Design Grp., Inc.*, No. 1:19-CV-4079, 2022 WL 2805341, at *2 (S.D. Ind. May 17, 2022) ("In determining whether a duty exists, the court examine[s] whether the general contractor's contract 'affirmatively evinces' an intent to assume a duty of care to the plaintiff in relation to the hazards at issue." (cleaned up)). In *Ryan*, the Indiana Supreme Court explained that, while precedent from

---

[4] In its opening brief, CHRW cites and applies the three-part balancing test Indiana courts sometimes employ to determine whether a duty exists: "(1) the relationship between the parties; (2) the foreseeability of harm; and (3) public policy concerns." *Goodwin*, 62 N.E.3d at 387 (citing *Webb v. Jarvis*, 575 N.E.2d 992, 995 (Ind. 1991)). However, the test is utilized only when "the element of duty has not already been declared or otherwise articulated." *Id.* (quoting *N. Ind. Pub. Serv. Co. v. Sharp*, 790 N.E.2d 462, 465 (Ind. 2003)). As argued by the Plaintiff, the balancing test is unnecessary in this case because the Plaintiff has declared the element of duty based on vicarious liability through CHRW's contract with Amazon. *Cf. Richardson v. Rasulov*, 1:19cv1549, 2021 WL 1429005, at *5–8 (S.D. Ind. Apr. 15, 2021) (applying the balancing test after finding that the complaint failed to allege the elements necessary for a claim of negligent selection or retention of a contractor).

the court of appeals in similar cases can be helpful in guiding a court, the issue is "best settled by a contract interpretation analysis." 72 N.E.3d at 916.

Accordingly, the Court turns to CHRW's contract with Amazon to determine whether its provisions imposed a specific duty of care on CHRW for the benefit of third-party motorists for the negligence of CHRW's independent contractors. When construing a contract, the Court must "ascertain the intent of the parties at the time the contract was made, as disclosed by the language used to express the parties' rights and duties." *Ryan*, 72 N.E.3d at 914 (citing *First Fed. Sav. Bank of Ind. v. Key Markets Inc.*, 559 N.E.2d 600, 603 (Ind. 1990)). The contract is considered "as a whole to determine if a party is charged with a duty of care," and the court "accept[s] an interpretation of the contract that harmonizes all its provisions." *Id.* (citing *Kelly v. Smith*, 611 N.E.2d 118, 121 (Ind. 1993)). "A contract should be construed so as to not render any words, phrases, or terms ineffective or meaningless." *Id.* (citing *State Farm Fire and Cas. Co. v. Riddell Nat'l Bank*, 984 N.E.2d 655, 658 (Ind. Ct. App. 2013)). Courts may not add provisions not agreed upon by contracting parties. *Lake Imaging, LLC v. Franciscan All., Inc.*, 182 N.E.3d 203, 211 (Ind. 2022).

The Plaintiff asserts that excerpts from two provisions of the contract create a nondelegable duty. First, the Plaintiff cites a portion of Section 10.2, titled "Subcontractors," in which CHRW agreed to "remain responsible for the full performance of the Services," which, as she points out, include receiving, loading, storing, transporting, unloading and related transportation services. The Plaintiff also cites a portion of Section 4(a), titled "Representations and Warranties," in which CHRW agreed to perform the "Services" in a professional, competent, and workmanlike manner and to comply with all federal, state, and local laws, rules, and regulations. The Plaintiff then reasons that "because CHRW was contractually charged with performing a specific duty, *i.e.* performance of the Services under the Agreement with reasonable care and in compliance with all applicable law, rules, and regulations, this was a

9

nondelegable duty that subjects CHRW to liability for DS1 and Webb's negligence." ECF No. 74, p. 8.

While Section 4 and Section 10.2 address CHRW's duty to Amazon to perform the Services, which consisted of services relating to the transportation of material goods, neither section refers to safety, third-party motorists, or personal injury accidents. Moreover, neither Section 10.2 nor any other provision of the Amazon contract provides that CHRW is responsible for the acts, omissions, negligence, and misconduct of independent contractors. Rather, Section 10.2 provides that CHRW will ensure that its *own* "employees and affiliates" comply with the agreement and that CHRW will be responsible "for all acts, omissions, negligence and misconduct of *such* personnel," meaning CHRW's own employees and affiliates. In contrast, Section 10.2 required CHRW to be responsible for ensuring *contractually* that its independent contractors were responsible for the acts and omissions of the independent contractor's own employees and that its independent contractors would comply with the terms of the Amazon contract.[5] And Section 10.1, which the Plaintiff does not address, provides that CHRW "shall engage subcontracted carriers that will have exclusive control over its personnel."

The only reference to "third parties" in the provisions of the Amazon contract cited by the Plaintiff is the reference in Section 4(c) to the infringement of proprietary and confidential information: "CHRW represents and warrants that it and its affiliates will, and that it shall contractually require subcontractors engaged by it to: . . . not violate or infringe any third party's right in proprietary or confidential information in performing the Services . . . ." Because the Amazon contract intended to create this specific limited duty to third parties, it is material that

---

[5] Although not dispositive of whether the Plaintiff has sufficiently alleged CHRW's nondelegable duty based on the Amazon contract, the Court notes that the Plaintiff does not allege that CHRW failed to contractually require DS1 to be responsible for all acts and omissions of DS1's employees. In fact, the contract between CHRW and DS1 imposes those very obligations on DS1, providing in Section 9 that DS1 was "solely responsible for any acts, omissions, and/or violations by [DS1], its employees, contractors or agents." The DS1 contract also provides in Section 12 that DS1, as an independent contractor, "shall exercise exclusive control, supervision, and direction over" the provision of the transportation services, the persons engaged in those services, and the equipment used.

the contract does not contain language creating a specific duty to third party motorists or to any third party for the negligence of its subcontractors. *See generally Jeffords*, 963 F.3d at 663 (noting that the contract, taken as a whole, was written to protect property, not people).

Thus, based on settled contract interpretation analysis, there is no language in the Amazon contract that affirmatively evinces an intent by CHRW to assume a duty of care to third parties for the negligence of its subcontractors or independent contractors. The Plaintiff's contention that CHRW "was . . . responsible for all of the acts, omissions, negligence and misconduct of DS1 and Webb during their performance of the transportation and delivery services," ECF No. 74 at 3; *see also* ECF No. 59, Ct. II, ¶ 8, is not supported by her citation to Section 10.2 or the express terms of the Amazon contract.

The absence of any such language in the Amazon contract is underscored by a comparison of its terms with those of the contract at issue in *Gwinn*, 9 N.E.3d 687, the only nondelegable duty case cited by the Plaintiff. In *Gwinn*, the plaintiff was injured when a projection screen fell from the ceiling of the high school classroom where she was teaching. *Id.* at 688. The plaintiff filed a claim against the general contractor for the negligent installation of the screen, and the general contractor moved for summary judgment on the bases that a subcontractor had installed the screen and that the general contractor owed no duty to the plaintiff. *Id.* at 688–89. The trial court found no duty as a matter of law. *Id.* at 689. The appellate court reversed, holding that the general contractor was vicariously liable for the subcontractor's negligence because the general contractor assumed a nondelegable duty to the plaintiff pursuant to the general contractor's contract with the school corporation. *Id.* at 689, 691. The court of appeals found that the general contractor "assumed a duty to supervise the work of its subcontractors and the construction methods employed in a reasonably prudent manner and specifically assumed responsibility for the alleged negligent acts and omissions of its subcontractors." *Id.* at 694. The court relied on contract language that made the general contractor "solely responsible for" and gave the general contractor "control over construction

11

means, methods, techniques, sequences and procedures" for the work under the contract. *Id.* at 692. The court also relied on the contract provision that the general contractor "shall be responsible to the Owner for acts and omissions of . . . *Subcontractors* and their agents and employees." *Id.*

In contrast, the Amazon contract does not give CHRW any control over the means and methods used by its subcontractors to provide the Services to Amazon. Nor does the Amazon contract contain any language making CHRW responsible for the acts and omissions of its subcontractors. Rather, as discussed above, the Amazon contract required only that CHRW "contractually require subcontractors" to be responsible for their own employees. *See* Section 4; *see also* Section 10. Although this comparison of language does not by itself decide this case, it is helpful in guiding the Court's consideration of the contract terms. *See Ryan*, 72 N.E.3d at 916. The Plaintiff has identified no provision in CHRW's contract with Amazon in which CHRW evinces an intent to be vicariously liable for the negligence of a third-party contract carrier, let alone to a class of third-party individuals, like Steven Nilles, for such negligence.

As a separate argument to avoid dismissal of the claim against CHRW, the Plaintiff suggests that the Amazon contract contains provisions that evince an intent to create an agency relationship between CHRW and DS1 rather than the independent contractor relationship set forth in the DS1 contract. The Plaintiff cites general legal principles that, notwithstanding an "independent contractor" label, a contract may contain provisions evidencing an agency relationship and that whether one is an employee or an independent contractor is a question for the trier of fact. *See Benante v. United Pac. Life Ins. Co.*, 659 N.E.2d 545, 548 (Ind. 1995). However, the Plaintiff's argument that the Amazon contract evinces an intent to create an agency relationship between CHRW and DS1 is based solely on the same assertion made above that "CHRW expressly and unequivocally agreed to maintain a continuing obligation *to be responsible for the acts and omissions of DS1 and Webb* and further stated that no other document of any contracted carrier would amend or supersede these contract terms." ECF No.

74, 10–11 (emphasis added). Again, the Amazon contract does not provide that CHRW is responsible for the acts and omissions of DS1 and Webb.

For these reasons, the Court finds as a matter of law that the Amazon contract does not affirmatively evince an intent on the part of CHRW to assume a specific duty of care to third parties, such as Steven Nilles, for the negligence of its independent contractors, such as DS1 and Webb. As a result, the Amazon contract does not constitute an exception to the general rule that a contractor is not liable for the negligence of an independent contractor. Because CHRW did not owe Steven Nilles a duty of care, the Court grants CHRW's motion to dismiss the Plaintiff's negligence claim against it. Because the Court finds that the Plaintiff has failed to allege a duty by CHRW, the Court does not reach CHRW's alternate argument based on preemption.

## CONCLUSION

Accordingly, the Court hereby GRANTS C.H. Robinson Worldwide, Inc.'s Motion to Dismiss Plaintiff's Third Amended Complaint Pursuant to Federal Rule of Civil Procedure 12(b)(6) [ECF No. 71] and ORDERS that the Plaintiff's claim against Defendant C.H. Robinson Worldwide, Inc. in Count II is DISMISSED with prejudice.

SO ORDERED on December 18, 2023.

    s/ Theresa L. Springmann
JUDGE THERESA L. SPRINGMANN
UNITED STATES DISTRICT COURT